## IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

**CARRIE M. WARD,** *et al*
      Plaintiffs/Substitute
      Trustees

v.

**MOHAMMAD RIZWAN**
**ROBINA SHAHEEN**
      Defendants

Case No: 409887V

---

**MOHAMMAD RIZWAN**
**and ROBINA SHAHEEN**
      Counter Plaintiffs

*On Behalf of Class and a Subclass of*
*Similarly Situated Persons*

v.

**FCI LENDER SERVICES INC.**
8180 E. Kaiser Blvd.
Anaheim, CA 92807
<u>SERVE ON:</u>
National Registered Agents, Inc. of Md.
351 W. Camden Street
Baltimore, MD 21201

And

**LONGVUE MORTGAGE CAPITAL, INC.**
895 Dove Street, Suite 125
Newport Beach, CA 92660
<u>SERVE ON:</u>
Registered Agent Solutions, Inc.,
      Resident Agent
Unite B2nd Floor
836 Park Ave.
Baltimore, MD 21202

And

**WESTVUE NPL TRUST II**
**(WESTVUE SERIES 2014-1)**
300 Delaware Avenue, 9th Floor

1

Wilmington, DE 19801
SERVE ON:
Sean Powell, Statutory Agent for Out of State
Corporations
Maryland SDAT
301 W. Preston Street, Suite 801
Baltimore, MD 21201
            Counter Defendants

## CLASS ACTION COUNTER-COMPLAINT & JURY DEMAND

Counter-Plaintiffs Mohammad Rizwan and Robina Shaheen ("Rizwan and Shaheen" or "Named Plaintiffs" or "Counter-Plaintiffs"), on their individual behalf and on behalf of a (i) FCI FDCPA Class,[1] and (ii) a WestVue Subclass[2] of similarly situated persons, through their attorneys Phillip R. Robinson and the Consumer Law Center LLC, and Heather L. Gomes and The Law Office of Heather L. Gomes, LLC, hereby bring this Class Action Counter-Complaint and Request for Jury Trial against Counter-Defendants, FCI Lender Services, Inc. ("FCI"), Longvue Mortgage Capital, Inc. ("Longvue"), and WestVue NPL Trust II (WestVue Series 2014-1) ("WestVue")(collectively "Counter-Defendants") and in support thereof state:

### I. INTRODUCTION

1.    The claims outlined herein exemplify certain predatory and deceptive debt collection practices which have garnered headlines and damaged the economy for the past several years in which certain so-called professionals flout the law and which have embroiled Rizwan and Shaheen and the putative class and subclass they seek to represent, who continue to suffer damage and losses directly and proximately caused by FCI's and Longvue's unsafe and unsound debt collection

---

[1] *See* ¶ 69 infra for definition.

[2] *See* ¶ 70 infra for definition.

practices related to the mortgage servicing and collection of Rizwan and Shaheen's debt as well as similar consumer debts across the state.

2.      Specifically, FCI and Longvue have knowingly collected or attempted to collect from Rizwan and Shaheen (as well as the FCI FDCPA Class) through litigation on behalf of unlicensed collection agencies who are not permitted to collect or attempt to collect consumer debts whatsoever as explained in the case of *Finch v. LVNV Funding, LLC*, 212 Md. App. 748, 71 A.3d 193, *reconsideration denied* (Sept. 3, 2013), *cert. denied sub nom. LVNV Funding v. Finch & Dorsey*, 435 Md. 266, 77 A.3d 1084 (2013).

3.      FCI and Longvue have known the law and since 2007 the law has been clear that in order for a collection agency to collect or attempt to collect in the State of Maryland either directly or indirectly it must be licensed.   Further, a person who is required to be licensed as a collection agency may not shield its collection activities through persons like FCI who have a separate license; all efforts to argue such an exemption under Maryland law have been rejected.

4.      By unfairly and deceptively aiding and assisting unlicensed collection agencies and mortgage lenders in the State of Maryland, as described herein, FCI has further violated its duty of good faith and fair dealing pursuant to its own license (License No. 19752) by the State of Maryland (which it may not lend to any other person or entity) in connection with the servicing of mortgage loans. Md. Code Regs. 09.03.06.20.   In addition, by unfairly and deceptively aiding and assisting unlicensed collection agencies and mortgage lenders in the State of Maryland, as described herein, Longvue has also violated its duty of good faith and fair dealing pursuant to its own license (License No. 21174) by the State of Maryland (which it may not lend to any other person or entity) in connection with the servicing of mortgage loans. Md. Code Regs. 09.03.06.20.

3

5.     As a direct and proximate result of FCI's and Longvue's attempts to collect consumer debts from them, Rizwan and Shaheen and the FCI FDCPA Class members have been damaged and harmed by: (i) FCI claiming sums due from Rizwan and Shaheen and the FCI FDCPA Class in litigation and otherwise, on behalf of unlicensed collection agencies for the purpose of pressuring Rizwan and Shaheen and the FCI FDCPA Class to pay the debts to persons who have no legal right to collect in the State of Maryland; (ii) Longvue claiming sums due from Rizwan and Shaheen and the FCI FDCPA Class in litigation and otherwise, on behalf of unlicensed collection agencies for the purpose of pressuring Rizwan and Shaheen and the FCI FDCPA Class to pay the debts to persons who have no legal right to collect in the State of Maryland; and (iii) Longvue and FCI recording and filing documents in land records and the state courts, under the color of law, demanding payments on behalf of unlicensed collection agencies.  In addition, Rizwan and Shaheen and the FCI FDCPA Class are entitled to statutory damages for FCI's violations of certain of the claims before the Court in this action.

6.     Finally, as a foreign statutory trust acquiring defaulted consumer debts in the State of Maryland, WestVue is required to be licensed as a Maryland collection agency but instead is skirting Maryland licensing laws by seeking to collect indirectly through FCI, Longvue, and others, including the Plaintiffs, when it has no legal right to collect indirectly through other persons since it is not licensed as a collection agency and is not otherwise exempt from licensure.  As a direct and proximate result of WestVue's illegal attempts to collect consumer debts from them, Rizwan and Shaheen and the WestVue Subclass members are entitled to statutory damages and actual damages as described herein.

## II. PARTIES

4

7.      Mr. Rizwan and Ms. Shaheen, a married couple, are residents of the State of Maryland and reside at the real property commonly known as 9252 Broadwater Drive, Gaithersburg, Maryland 20879 ("the Property") with their children. Mr. Rizwan is the owner of the Property.

8.      Defendant FCI Lender Services, Inc. ("FCI" or "Defendant") is one of the mortgage servicers employed by WestVue, which is the purported owner of Rizwan and Shaheen's loan and the loans of the WestVue Subclass, subject to this action. FCI acquired its servicing rights when the loan was in default after December 2, 2013.   WestVue has delegated and assigned certain duties related to the Rizwan and Shaheen loan (and the WestVue Subclass) to FCI and Longvue as its authorized agents on its behalf. These duties include the retention of attorneys/substitute trustees to initiate foreclosure proceedings against Maryland residents.   Upon information and belief, FCI acts in the same capacity for other unlicensed, residential mortgage owners in the State of Maryland as well. This belief is based upon public records with the Office of the Commissioner of Financial Regulation and filings in this and other courts around the State of Maryland.

9.      Counter Defendant Longvue Mortgage Capital Inc. is a Delaware corporation registered to do business in the State of Maryland. Longvue and its affiliate, CV Holdings, Inc., has a primary business activity involving the acquisition and management of residential non-performing loans (NPLs) in default. As part of this business activity Longvue manages the day to day operations of various statutory trusts (and does not permit the named trustee of said trust to conduct any management activities), including WestVue, and actively participates through its employees and officers in the collection of the defaulted consumer debts owned by these statutory trusts.

10.     WestVue is a foreign statutory trust formed in the State of Delaware for the primary purpose of acquiring defaulted mortgage debts owed by consumers in Maryland and elsewhere. Because WestVue only intends to acquire defaulted, consumer debts for the primary purpose of

5

commencing property acquisition by foreclosure, deeds in lieu, and short sales from various assigners, it qualifies as a debt collector under the FDCPA and a collection agency under Maryland law. WestVue is nothing more than an account. WestVue does not have any employees and does not operate like a bank, credit union, or trust company; WestVue's named trustee performs no significant management activities and instead merely acts as the holder of the WestVue account and performs no management of the trust which is instead conducted by Longvue and its affiliate CV Holdings, Inc. WestVue is also not exempt from the licensure requirements for collection agencies in the State of Maryland. At all times relevant to these proceedings FCI and Longvue were aware of these facts (as well as the facts related to other unlicensed collection agencies with which they are associated) but FCI and Longvue elected to recklessly disregard the known facts and knowingly continued to collect and/or attempt to collect on behalf of WestVue and other unlicensed collection agencies even though each knew they had no legal right to do so either directly or indirectly in the State of Maryland on behalf of an unlicensed collection agency.

### III. JURISDICTION & VENUE

11.     This Court has jurisdiction over this matter because the Counter-Defendants regularly transact business and perform work and services in Maryland and Montgomery County, Maryland and have availed themselves of the jurisdiction of this Court through their appointed agents and foreclosure trustees. Further, since this is a putative Class Action, this trial court is the only court in the State of Maryland authorized to consider the matter pursuant to MD. RULE 2-231.

12.     Counterclaims filed in a foreclosure matter have been approved by the Court of Appeals. *Fairfax Sav., F.S.B. v. Kris Jen Ltd. P'ship*, 338 Md. 1 (1995). Further, the Court of Appeals has explained that when legal claims with a jury demand, like those presented by the Counter-Plaintiffs in this action, are presented in an equitable action, the legal claims must proceed first before the

Court considers the equitable remedy, such as requests to ratify a foreclosure sale or for possession of the property. *Higgins v. Barnes*, 310 Md. 532, 551-52, 530 A.2d 724, 733-34 (1987). The Legislature has also confirmed that it intended that rights, such as those asserted herein by Mr. Rizwan and Ms. Shaheen, are preserved by recent changes to Maryland's foreclosure laws. Md. Code Ann., Real Prop. § 7-105.1(m)(3)("Nothing in this subtitle precludes the mortgagor or grantor from pursuing any other remedy or legal defense available to the mortgagor or grantor").

13.     Declaratory and injunctive relief is available pursuant to MD. CODE ANN. CTS. & JUD. PROC., §§ 3-401 to 3-415.

14.     Venue is appropriate in this Court because the Counter-Defendants conduct business and their debt collection activities, including foreclosure, within Montgomery County, Maryland.

## IV. FACTS

### A.     Background on the Loan and Named Plaintiffs

15.     Mr. Rizwan purchased the Property on or about March 5, 2002 for himself and his family. To acquire the Property he utilized a consumer, mortgage loan funded by Countrywide Home Loans, Inc. On November 16, 2005, Mr. Rizwan refinanced the Property with a loan from CitiCorp Trust Bank, FSB ("CitiCorp"), and Ms. Shaheen was added as a borrower. The proceeds from the refinance transaction were utilized for personal, consumer purposes.

16.     In 2010, seeking to improve the terms of the loan, which had an interest rate of 8.092%, Mr. Rizwan called CitiCorp and asked to modify the loan. He submitted papers requested by CitiCorp, which approved a modification, and Mr. Rizwan and Ms. Shaheen accepted a "Home Affordable Modification Agreement" with a Modification Effective Date of October 4, 2010.

17.     Like many others, Mr. Rizwan and Ms. Shaheen sustained in the recent recession an unexpected reduction of income and fell behind on their mortgage loan. Mr. Rizwan's job loss in

July 2012 put a strain on Mr. Rizwan's and Ms. Shaheen's household finances and thereafter they defaulted on the mortgage loan subject to this action. The Plaintiffs have represented to the Court in sworn testimony (Doc. 6) that Mr. Rizwan's and Ms. Shaheen's date of default on the loan is December 2, 2013.

18.     After Mr. Rizwon's job loss, Mr. Rizwan and Ms. Shaheen again applied for appropriate loss mitigation from their new mortgage servicer, Servis One, Inc. d/b/a BSI Financial Services ("BSI"), which had taken over servicing of the loan from CitiCorp.   They were offered and accepted a trial modification and made the three months of trial payments.

19.     After making the three trial payments, Mr. Rizwan called BSI to find out to whom he should continue to make payments and was told that yet another servicer, Shellpoint Mortgage Servicing ("Shellpoint"), had taken over the loan.

20.     Mr. Rizwan soon called Shellpoint and was told that he needed to resubmit documents in support of a loan modification, even though BSI had approved a trial modification.  Mr. Rizwan resubmitted documents in support of a loan modification application.

21.     A short time later, when Mr. Rizwan called to check the status of his application, he was told that Shellpoint no longer serviced his mortgage and that FCI had taken over the servicing of the loan.

22.     The mortgage servicing rights of Mr. Rizwan and Ms. Shaheen's mortgage loan transferred to FCI after December 2, 2013 when FCI believed the loan to be in default.

23.     Mr. Rizwan called FCI after the servicing rights had transferred to it and was told to resubmit his application in support of a loan modification. He did so promptly thereafter.  FCI then repeatedly asked for proof of homeowner's insurance.  In response to FCI's requests, Mr.

Rizwan repeatedly submitted proof of insurance with Nationwide.  Each time FCI claimed not to receive the proof of homeowner's insurance from Rizwan and it forced-placed its own insurance.

24.      Sometime on or after December 11, 2014, the owner of the loan sold the Rizwan and Shaheen loan to WestVue.  No assignment to WestVue is recorded in the land records of Montgomery County concerning this transaction, but WestVue was not legally formed as a Delaware statutory trust until December 11, 2014 so it is a legal impossibility that it acquired the Rizwan and Shaheen loan before December 11, 2014.  At the time it acquired the Rizwan and Shaheen loan, WestVue believed the loan to be in default by its own admissions to this Court in the papers filed by the Plaintiffs in support of the foreclosure.

25.      Rizwan and Shaheen's loan and the loans of the WestVue subclass members were sold for pennies on the dollar of the alleged values owed.  WestVue was established for the primary business purpose of acquiring defaulted mortgage debts at a significant discount and then to realize a gain by acquiring and liquidating the property.

26.      WestVue has communicated with Rizwan and Shaheen, indirectly through its agents (i.e. FCI, Longvue, and the Plaintiffs), for the purpose of attempting to collect upon Rizwan and Shaheen's consumer, mortgage loan subject to these proceedings.  These communications included mailing monthly statements demanding sums which WestVue is not legally entitled to collect as an unlicensed collection agency.

27.      WestVue commenced this litigation against Rizwan and Shaheen, indirectly through its agents (i.e. FCI, Longvue, and the Plaintiffs), for the purpose of attempting to collect upon Rizwan and Shaheen's consumer, mortgage loan subject to these proceedings.  These communications included the following papers filed in this litigation by the Plaintiffs demanding sums (directly and

indirectly) which WestVue is not legally entitled to collect as an unlicensed collection agency in the State of Maryland:

a.  Longvue's Executive Vice-President David Haddad signed the Appointment of Substitute Trustees presented by the Plaintiffs on behalf of WestVue on June 29, 2015.  Longvue failed to disclose to the Court in this Deed of Appointment  that WestVue was unlicensed as a collection agency in the State of Maryland.  Longvue also caused this Deed of Appointment to be recorded in the land records of Montgomery County as part of its collection activities on behalf of WestVue to give it the appearance that WestVue's direct and indirect action are permitted under the color of law.  Without this purported Deed of Appointment in the Court records, Plaintiffs would not be able to legally proceed in this action.

b.  FCI's Joe Sedeno signed the Final Loss Mitigation Affidavit presented to the Court by the Plaintiffs on behalf of WestVue on August 25, 2015.  FCI failed to disclose to the Court in this affidavit that WestVue was unlicensed as a collection agency in the State of Maryland.  Without this purported affidavit in the Court records, Plaintiffs would not be able to legally proceed in this action.

c.  Plaintiff Nicholas Derdock has provided the Court with his sworn testimony that WestVue may proceed in this action on the contemplated foreclosure action on behalf of WestVue based upon the default established by subject lien instrument (i.e. Deed of Trust) in his Affidavit, Pursuant to Md. Rule 14-207(b)(1) Regarding Copy of Lien Instrument.  Mr. Derdock failed to disclose to the Court in this affidavit that WestVue was unlicensed as a collection agency in the State of

Maryland. Without this purported affidavit in the Court records, Plaintiffs would not be able to legally proceed in this action.

d. FCI's JoAnne Muro-Abbatecola signed the Affidavit of Deed of Trust Debt and Right to Foreclose presented to the Court by the Plaintiffs on behalf of WestVue on August 24, 2015. FCI failed to disclose to the Court in this affidavit that WestVue was unlicensed as a collection agency in the State of Maryland and therefore has no legal right to collect indirectly in this action. Without this purported affidavit in the Court records, Plaintiffs would not be able to legally proceed in this action.

e. FCI's JoAnne Muro-Abbatecola signed the Affidavit Certifying Ownership of Debt Instrument and Truth and Accuracy of Copy Filed Herein presented to the Court by the Plaintiffs on behalf of WestVue on August 24, 2015. FCI failed to disclose to the Court in this affidavit that WestVue was unlicensed as a collection agency in the State of Maryland and therefore has no legal right to collect indirectly in this action. Without this purported affidavit in the Court records, Plaintiffs would not be able to legally proceed in this action.

f. Plaintiff Nicholas Derdock has provided the Court with his sworn testimony that WestVue may proceed in this action on the contemplated foreclosure action on behalf of WestVue based upon his Affidavit, Pursuant to Md. Rule 14-207(b)(4) Regarding Copy of Appointment of Substitute Trustee/Assignment of Mortgage. Mr. Derdock failed to disclose to the Court in this affidavit that WestVue was unlicensed as a collection agency in the State of Maryland. Without this purported affidavit in the Court records, Plaintiffs would not be able to legally proceed in this action.

11

g. Plaintiff Nicholas Derdock has provided the Court with his sworn testimony that WestVue may proceed in this action on the contemplated foreclosure action on behalf of WestVue based upon his Affidavit Regarding Mailing and Accuracy of Notice of Intent to Foreclose.  Mr. Derdock failed to disclose to the Court in this affidavit that WestVue was unlicensed as a collection agency in the State of Maryland and that the Notice of Intent to Foreclose was false and misleadings since it did not disclose Longvue's interest in the subject loan.  Without this purported affidavit in the Court records, Plaintiffs would not be able to legally proceed in this action.

h. Longvue's Art Valera communicated by telephone with Counter-Plaintiff Mohammad Rizwan on December 16, 2015 and December 21, 2015 for the purpose of collecting upon the subject mortgage debt of the Counter-Plaintiffs subject to this action and potential loss mitigation alternatives to foreclosure which would permit WestVue to collect certain sums owed on the mortgage.  Mr. Valera failed to disclose to Mr. Rizwan in these communications that WestVue was not licensed as a Maryland collection agency.

i. The Plaintiffs, as agents for FCI and Longvue, knowingly concealed from the Counter Plaintiffs in the June 15, 2015 Notice of Intent to Foreclose sent to the Counter-Plaintiffs the identities of each of the mortgage servicers involved with Rizwan and Shaheen's loan.  Specifically the Plaintiffs did not disclose Longvue's role and association with the loan as an additional servicer or agent for WestVue. This knowingly incomplete information is material to borrowers like Rizwan and

Shaheen as held by the Court of Appeals in *Shepherd v. Burson*, 427 Md. 541, 50 A.3d 567 (2012).

28.     In each of the communications described in the previous paragraph, FCI and Longvue sought to aid WestVue to collect from Rizwan and Shaheen indirectly even though each knew (i) the subject debt was a consumer debt, (ii) that WestVue acquired the debt while it was in default, and (iii) WestVue was unlicensed as a collection agency and had no right to collect in the State of Maryland without a collection agency license and was not otherwise exempt from being licensed.

29.     At the time WestVue acquired the Rizwan and Shaheen loan, Longvue, WestVue, and FCI believed Rizwan and Shaheen's consumer debt to be in default.  This belief was based on the loan records obtained from their predecessors in interest to the subject loan at the time of acquisition which included the loan status and payment history.  Further, WestVue only intends to acquire non-performing, defaulted loans as its primary business and Longvue and FCI also know and intend as part of their primary business activities to only acquire the servicing rights for defaulted, non-performing mortgage loans.

30.     Since the time FCI became a servicer for the Rizwan and Shaheen loan through the present, it has known that WestVue is not licensed as a Maryland collection agency but it has knowingly failed to disclose that fact to the Counter-Plaintiffs, the State of Maryland, or this Court.

31.     Despite its knowledge described herein FCI falsely reported to various credit reporting agencies, in January 2015 and thereafter that Rizwan and Shaheen owed it money on the loan and the loan was past due.  Further compounding its false reporting, FCI has reported the loan as in foreclosure status which was false and misleading since WestVue has no legal right to pursue any judicial action in a Maryland court as an unlicensed collection agency.  *See Finch v. LVNV Funding, LLC*, 212 Md. App. 748 (2013).

32. Despite its knowledge described herein, sometime on or shortly before June 15, 2015, FCI and/or Longvue acting on behalf of WestVue retained the foreclosure law firm of BWW Law Group, LLC for the purpose of collecting the defaulted consumer debt from Rizwan and Shaheen that is subject to this action.

33. On or before July 1, 2015 Rizwan and Shaheen sent to FCI a Request for Mortgage Assistance ("RMA") with all the documents FCI commonly requested for a complete loss mitigation application.

34. On July 21, 2015, FCI denied the loss mitigation application. The Final Loss Mitigation Affidavit filed with this proceeding states that the loan modification was denied "for DTI and HDTI ratios."

35. FCI and Longvue proceeded on September 29, 2015 to commence (through the Plaintiffs) this debt collection, foreclosure action on behalf of WestVue against Rizwan and Shaheen and the Property.

36. WestVue, through FCI and Longvue, specifically authorized this filing even though WestVue is not permitted to collect indirectly in the State of Maryland as an unlicensed collection agency and FCI is not permitted to loan its license to another, including WestVue, who is otherwise required to be licensed.

37. Due to an increase in his household's income, which would positively affect the debt-to-income and housing debt-to-income ratios, Mr. Rizwan submitted another application to FCI with the assistance of a housing counselor, Zulma Miranda, employed by Housing Initiative Partnership ("HIP"), in November 2015.

14

38.    Rizwan and Shaheen submitted this application to FCI by fax transmission on November 9, 2015 and again on November 10, 2015.  As shown by a fax confirmation, FCI received the 45-page application.

39.    In a letter dated November 18, 2015 faxed by FCI to HIP, FCI requested that Rizwan and Shaheen send it twelve months of bank statements.

40.    In reliance on FCI's request sent November 18, 2015, Rizwan and Shaheen sent to FCI by fax transmission from HIP on November 24, 2015, the requested bank statements.  On December 7, 2015, Rizwan and Shaheen, through HIP and in further reliance on FCI's requests, sent an additional fax containing missing pages from the bank statements previously sent.

41.    On December 14, 2015, Mr. Rizwan attended foreclosure mediation where he incurred legal expense by engaging counsel to aid him in reliance on FCI's, Longvue's, and WestVue's representations that it would consider the Counter-Plaintiffs' loss mitigation application.  No agreement was reached and the mediation was concluded.

42.    As a direct and proximate result of the illegal, unfair, and deceptive practices of FCI, Longvue, and WestVue described herein, Rizwan and Shaheen have sustained economic damages and losses in the form of improper late fees, legal fees, collection costs and fees, and interest added to Rizwan and Shaheen's account which WestVue is not legally entitled to collect as an unlicensed collection agency.  Rizwan and Shaheen have also sustained emotional damages which have been manifested by embarrassment, fear, and anxiety that FCI, Longvue, and WestVue will proceed in this action to foreclose on their home and property even though WestVue's actions are illegal and improper.

43.    Rizwan and Shaheen are also entitled to statutory damages under the FDCPA from FCI, Longvue, and WestVue.

B.  **Facts Related to FCI, Longvue, and WestVue Related to the Claims Before this Court**

44.     FCI Lender Services, Inc. (FCI) is a mortgage servicer which concentrates its servicing portfolio in the non-performing loan area (i.e. defaulted mortgage loans). FCI also concentrates its services for non-bank, privately owned mortgage loans as part of its primary business activities. According to its website, FCI can customize the services it provides to various entities by providing some or all services normally considered mortgage practices.

45.     Presently, FCI's book of business is valued at more than $4 billion according to its website. Based upon this book of business, FCI's net value clearly exceeds $50,000,000.   Included in its book of business, FCI services hundreds of Maryland mortgage loans.

46.     Presently, Longvue's book of business is valued at more than $50,000,000 according to its affiliate's website (i.e. CV Holdings) and published reports.  As a primary business activity, Longvue manages for private investors hundreds or thousands of mortgage loans which were acquired while in default and it only intends to liquidate those loans for short-term investment purposes on behalf of its investors and not to modify the loans for long-term investment purposes. Included in its book of business Longvue services and manages hundreds of Maryland mortgage loans owned by others.

47. The Consumer Financial Protection Bureau ("CFPB") has received more than fifty complaints from consumers regarding FCI's mortgage servicing and loss mitigation practices related to this action and the claims before the Court.  These complaints are publically available on the CFPB's website at: http://www.consumerfinance.gov/complaintdatabase/.

48.     WestVue is not now and never has been licensed as a Maryland collection agency and is not exempt from the licensing statutes.  It has, however, acted as an unlicensed collection agency

by demanding and attempting to collect through its authorized agents, including FCI and Longvue, sums it is not legally entitled to collect from Rizwan and Shaheen and WestVue Subclass members since it is acting without a mandatory license as a collection agency and/or mortgage lender. WestVue intends and expects that nearly 100% of all loans it acquires will be in default at the time of acquisition and it will liquidate a substantial majority of the properties related to each loan, for purposes of collecting upon the loan, by pursuing foreclosures, deeds in lieu of foreclosure, and other non-retention property options related to the loans.

49.     FCI relied upon the records of WestVue and Longvue for its belief that Rizwan and Shaheen and the WestVue Subclass members' loans were in default at the time it acquired the servicing rights of their loan and the loans of the Subclass members and performed no investigation of the facts available to it whatsoever, thus willfully blinding itself to the knowingly false information conveyed to it.

50.     FCI, as an authorized mortgage servicer, has communicated directly or indirectly concerning consumer debts owned by WestVue and similar unlicensed collection agencies with demands and threats for payments and threats of judicial action, including foreclosure, even though WestVue has no legal right to collect indirectly through FCI and other collectors as an unlicensed collection agency.

51.     Longvue has also communicated directly or indirectly concerning consumer debts owned by WestVue and similar unlicensed collection agencies with demands and threats for payments and threats of judicial action, including foreclosure, even though WestVue and similar other entities like it that are managed by Longvue, have no legal right to collect indirectly through Longvue.

17

52.    WestVue was specifically formed to acquire defaulted, distressed mortgage loans at a significant discount from the sums claimed to be owed on the mortgage balances.

53.    Longvue's primary business activities involve the acquisition and management of defaulted, consumer debts (including mortgage loans subject to this action) for the short-term goal of collection through foreclosure, deeds in lieu of foreclosure, short sales, and other non-retention loss mitigation.  Longvue performs services for this objective on behalf of other entities and investors.

### C.    The Counter Defendants' Legal Duties Related to the Subject Transaction

54.    The Court of Appeals in 2005 recognized that a real estate professional who had no direct communication with a borrower nevertheless had a duty to a consumer under the Maryland Consumer Protection Act and Maryland common law to make a "reasonable investigation" of the true facts in the real estate transaction on which the borrower (and other parties) would rely in order to complete the transaction.  *Hoffman v. Stamper*, 385 Md. 1, 867 A.2d 276 (2005).  This duty of care applies to WestVue, Longvue, and FCI.

### D.    Maryland's Response to the Unlicensed Collection Agency and Debt Collection Crisis as Related to the Counter Defendants

55.    FCI, Longvue, and WestVue are "debt collectors" as defined by the FDCPA, 15 U.S.C. § 1692a(4)(6) since each are businesses engaged in purchasing and collecting on defaulted debts by using interstate wires and mail, among other acts. *See also Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003) (the FDCPA "treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not. *See Bailey v. Security Nat'l Servicing Corp.*, 154 F.3d 384, 387 (7th Cir.1998); *Whitaker v. Ameritech Corp.*, 129 F.3d 952, 958 (7th Cir.1997); *see also Pollice v. Nat'l Tax Funding, L.P.*,

225 F.3d 379, 403-04 (3d Cir.2000); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 106-07 (6th Cir.1996); *Perry v. Stewart Title Co.,* 756 F.2d 1197, 1208 (5th Cir.1985)").

56.     WestVue also acts as a "collection agency" as defined by the Maryland Collection Agency Licensing Act, MD CODE ANN., BUS. REG. §7-101, *et seq*. ("MCALA").

57.     As part of its routine and ongoing collection practices, WestVue regularly collects monthly mortgage payments and/or reinstatement sums or short-payoffs by and through the mails and interstate wires through its authorized servicer FCI and manager Longvue. WestVue also attempts to collect through civil litigation in Maryland courts authorized by it and through its authorized agents, including actions which are filed as foreclosure actions in the state courts.

58.     Under MD CODE ANN., BUS. REG. §7-301, a person must have a license to do business as a collection agency in the State of Maryland.

59.     The Maryland Commissioner of Financial Regulation, the state regulator of persons who acquire consumer debt after default and file lawsuits in Maryland to collect the debt, has clearly stated that:[3]

> ... 4. The position of the Agency is that, unless otherwise exempt, a person who brings actions in Maryland State courts to collect consumer claims which were acquired when the claims were in default is knowingly and willfully doing business as a "collection agency" in the State under [Bus. Reg.] § 7-101(c). This includes, but is not limited to, the named Plaintiffs in such judicial actions, which will normally be the owners of the consumer debt.
>
> 5. Thus the Agency's position is that a Plaintiff in a Maryland State court action brought to collect a consumer claim which was acquired when the claim was in default is required to be licensed as a collection agency under MCALA, and is subject to the regulatory authority of the Agency in the conduct of that litigation.
>
> 6. The position of the Agency is that a person who brings judicial actions in Maryland State courts to collect consumer claims which were acquired when the claims were in default also meet the definition of "collector" under CL § 14-201(b) of the

---

[3] *In the Matter of: Midland Funding, LLC, et al.,* before the Maryland State Collection Agency Licensing Board in the Office of the Commissioner of Financial Regulation, CFR-FY-2010-063.

Maryland Consumer Debt Collection Act ("MCDCA," at Commercial Law Article ("CL"), § 14-201 *et seq.*, Annotated Code of Maryland) and of "debt collector" under 15 U.S.C. § 1692(a) of the Fair Debt Collection Practices Act ("FDCPA," at 15 U.S.C. § 1692, *et seq.*)…

60.     Every collection effort in Maryland authorized by FCI on behalf of unlicensed collection agencies, such as WestVue (who is acting without a Collection Agency license), including each and every foreclosure action filed in Maryland courts on its behalf as well as the collection and attempted collection of any mortgage payments, and each and every judgment lien filed in Maryland, is an unfair or deceptive trade practice since these actions were taken without the right to do so as stated by the legislature.

61.     Before the 2007 session of the Maryland General Assembly, debt buyers like WestVue sought to avoid Maryland statutes and regulation by asserting that they were not subject to Maryland statues addressing collection agencies. *See*, Legislative History for 2007 chap. 472 (Bus. Reg. 7-101) HB 1324. As a result, the 2007 General Assembly required WestVue, and other debt buyers to acquire a license by October 1, 2007. *Id.* All persons had knowledge of the law.

62.     Then Maryland Commissioner of Financial Regulation, Charles W. Turnbaugh, explained the purpose of the bill, HB 1324, at the time, as follows:

> … The law does not require licensing for businesses that only collect their **own** consumer debts, unless the business uses a name or other artifice that indicates that another party is attempting to collect the consumer debt. However, the evolution of the debt collection industry has created a "loophole" used by some entities as a means to circumvent current State collection agency laws. Entities, such as "debt purchasers" who enter into purchase agreements to collect delinquent consumer debt rather than acting as an agent for the original creditor, currently collect consumer debt in the State without complying with any licensing or bonding requirement. The federal government has recognized and defined debt purchasers as collection agencies, and requires that these entities fully comply with the Federal Fair Debt Collection Practices Act. **This legislation would include debt purchasers within the definition of a "collection agency," and require them to be licensed by the Board before they may collect consumer claims in this State** … [emphasis added].

63.    However, WestVue has attempted to collect from Rizwan and Shaheen and the Westvue Subclass through FCI and Longvue while it did not have the mandatory license required by MCALA and continued its business of collecting debts acquired in default and filing collection lawsuits in Maryland courts without the right to do so.  FCI has known that WestVue was unlicensed but it acted anyway even though it knew, as any other person knew, that under Maryland law WestVue was required to be licensed.

64.    In sworn testimony before the United States District Court for the District of Maryland, Kelly Mack from the Maryland Department of Labor, Licensing, and Regulation testified that "[i]t has been the consistent position of the [Maryland State Collection Agency] Board that a Consumer Debt Purchaser (i.e., a person who acquires consumer claims which are in default at the time of the acquisition) that collects consumer claims through litigation is a 'collection agency' under Maryland law and is required to be licensed as such, regardless of whether an attorney representing the Consumer Debt Purchaser in the litigation is a licensed collection agency."

65.    Following enactment of HB 1324, the Maryland Commissioner of Financial Regulation issued its position on the change in law as DLLR Advisory Notice No. 07-06 ("Advisory").  The Advisory clearly stated the Commissioner's official position on the changes to MCALA, i.e.: "… effective October 1, 2007 any person engaged in the collection of a consumer claim the person owns, if the claim was in default when the person acquired it, is required to be licensed as a collection agency pursuant to HB 1324 …".

66.    Maryland's Commissioner of Financial Regulation has also determined that a debt purchaser who acquires mortgage debts must be licensed as a mortgage lender, unless otherwise eligible for an exemption from the Maryland Mortgage Lender Law ("MMLL"). *In the Matter of: National Payment Relief, LLC, et al.,* before the Maryland State Collection Agency Licensing

21

Board in the Office of the Commissioner of Financial Regulation, CFR-FY-2014-0001. WestVue does not qualify for any of the exemptions provided for in the MMLL.[4]

67.     Even though it has had sufficient notice that WestVue and similar statutory trusts have no legal right to collect in the State of Maryland while acting as unlicensed collection agencies as described *supra*, FCI reported debt to the credit bureaus for the purpose of pressuring Rizwan and Shaheen and the FCI FDCPA Class members to pay a debt that cannot be legally collected by an unlicensed collection agency.

68.     FCI has willfully and knowingly sought, directly or indirectly, to collect debts on behalf of its unlicensed principals (i.e. WestVue and others like it), including threatening to utilize the foreclosure process when WestVue and others like it have no legal right to pursue the foreclosure process. FCI has also recklessly disregarded the notice before it in the preceding paragraphs, and proceeded in its collection attempts with knowledge that WestVue was an unlicensed collection agency. Further, FCI has conspired with Longvue to collect on behalf of WestVue even though such an unlicensed entity has no legal right to collect without the mandatory license required by Maryland law (either directly or indirectly). These are material misrepresentations and false statements and omissions by FCI and Longvue which would and have misled the least sophisticated consumer by: (i) enticing voluntary payments for sums not legally due to WestVue

---

[4] Unlicensed mortgage lenders simply are not entitled to collect certain claimed debt, directly or indirectly, in the State of Maryland. MD. CODE ANN., FIN. INST. § 11-504 ("A person may not act as a mortgage lender unless the person is: (1) A licensee; or (2) A person exempted from licensing under this subtitle"). Unlicensed mortgage lenders also may collect only the principal amount of the loan. MD. CODE ANN., FIN. INST. § 11-523(b)("Any unlicensed person who is not exempt from licensing under this subtitle who makes or assists a borrower in obtaining a mortgage loan in violation of this subtitle may collect only the principal amount of the loan and may not collect any interest, costs, finder's fees, broker fees, or other charges with respect to the loan").

(and similar unlicensed entities) or (ii) leading an unsophisticated consumer to forgo a valid defense to the foreclosure actions commenced without the right to do so.

## V.   NAMED PLAINTIFFS' CLASS ALLEGATIONS

### A. FDCPA Class and FDCPA Subclass Specific Allegations

69.     This action is partially brought on behalf of a FCI FDCPA Class under Rule 2-231. Named Plaintiffs propose, as the definition of the FCI FDCPA Class, that it be defined as follows:

> Those persons in the State of Maryland with whom FCI has communicated directly or indirectly for the purpose of collecting a consumer debt on behalf of an unlicensed collection agency at the direction of Longvue.

70.     This action is also partially brought on behalf of a WestVue Subclass under Rule 2-231. Named Plaintiffs propose, as the definition of the WestVue Subclass, that it be defined as follows:

> Those members of the FCI FDCPA Class with whom WestVue has communicated directly or indirectly, through its authorized agents and subagents, for the purpose of collecting a consumer debt it acquired.

71.     The particular members of the FCI FDCPA Class and the WestVue Subclass are capable of being described without difficult managerial or administrative problems.  The members of the FCI FDCPA Class and the WestVue Subclass are also readily identifiable from the information and public records available from the State of Maryland Land Records and the Office of the Commissioner of Financial Regulation.  The particular members of the FCI FDCPA Class and the WestVue Subclass are also readily indefinable from the Counter Defendants' own business records which are admissible under the Maryland Rules.

72.     The FCI FDCPA Class and the WestVue Subclass members are sufficiently numerous that individual joinder of all members is impractical.  This allegation is based in part on the fact that FCI, Longvue, and WestVue have acquired an interest in more than fifty defaulted mortgage notes,

according to public records, throughout the State of Maryland related to the Named Plaintiffs and

FCI FDCPA Class and the WestVue Subclass.  Further, according to public records FCI, Longvue,

and WestVue have attempted and/or actually utilized the collection tools of the state courts to

collect from FCI FDCPA Class and WestVue Subclass members.

73.     There are questions of law and fact common to the FCI FDCPA Class and WestVue

Subclass which predominate over any questions affecting only individual members of the FCI

FDCPA Class and WestVue Subclass respectively and, in fact, the wrongs alleged against (i) FCI

by the FCI FDCPA Class members and (ii) WestVue by the WestVue Subclass members, and the

remedies sought by Named Plaintiffs and the FCI FDCPA Class and WestVue Subclass members

against FCI, Longvue, and WestVue are identical, the only difference being the exact sum which

each FCI FDCPA Class and WestVue Subclass member is entitled to receive from the claims

asserted herein.  The common issues include, but are certainly not limited to:

     i.    Whether FCI has the right to assess mortgage borrower accounts for sums not validly due an unlicensed mortgage owner and/or collection agency acting in the State of Maryland;

    ii.    Whether the FCI FDCPA Class members are third party beneficiaries of FCI's and Longvue's duty of good faith under their licenses pursuant to Md. Code Regs. 09.03.06.20;

    iii.    Whether FCI, LongVue, WestVue, and other similar collection agencies/mortgage lenders are entitled to any relief by a Maryland court since WestVue and similar entities are acting without a license but are required to be licensed;

    iv.    Whether FCI, Longvue, or WestVue ever disclosed to the Named Plaintiffs and the FCI FDCPA Class and WestVue Subclass members and the Maryland Courts as

part of their collection attempts that WestVue and similar entities on whose behalf FCI or Longvue acted as the mortgage servicer, did not have the required license to collect on the alleged sums demanded;

v.    Whether FCI's, Longvue's, and WestVue's concealment of the true facts concerning the illegal status of WestVue and similar entities on whose behalf FCI acted as the mortgage servicer should toll any limitations period(s) applied to the FCI FDCPA Class' and WestVue Subclass' claims;

vi.   Whether FCI and Longvue concealed from members of the WestVue Subclass that WestVue was not licensed as a collection agency and had no right to collect in the State of Maryland without a collection agency license;

vii.  Whether there are at least 50 members of the FCI FDCPA Class and WestVue Subclass;

viii. Whether FCI knowingly communicated false information to other persons, including credit reporting agencies, concerning whether the debts it was intending to force the Named Plaintiffs and FCI FDCPA Class members to pay on the debts even though it had no legal right to collect from the Named Plaintiffs and FCI FDCPA Class members on behalf of WestVue and similar unlicensed entities; and

ix.   Whether FCI is permitted to continue collecting upon the loans of the FCI FDCPA Class and whether WestVue is permitted to collect upon the loans of the WestVue Subclass.

74.    The claims of the Named Plaintiffs are typical of the FCI FDCPA Class and the WestVue Subclass members and do not conflict with the interests of any other members of the FCI FDCPA Class and WestVue Subclass because the Named Plaintiffs and the other members of the putative

class and subclass were subject to the same conduct, same practices and procedures by FCI and WestVue members respectively, and were met with the same unlawful collection activities.

75.     Named Plaintiffs are similarly situated with and have suffered similar damages as the other members of the FCI FDCPA Class and WestVue Subclass.

76.     FCI's, Longvue, and WestVue's defenses (which defenses are denied) would be typical of and identical for each member of the FCI FDCPA Class and WestVue Subclass and will be based on the same legal and factual theories.

77.     The Named Plaintiffs will also fairly and adequately represent and protect the interests of the FCI FDCPA Class and WestVue Subclass.   Named Plaintiffs have retained counsel experienced in consumer class actions including actions involving unlawful lending, mortgage servicing and debt collection practices.  Named Plaintiffs do not have any interests which might cause them not to vigorously prosecute this action or that are otherwise adverse to the interests of the members of the FCI FDCPA Class and WestVue Subclass.

78.     Certification of the FCI FDCPA Class and WestVue Subclass under Rule 2-231(b)(2) and (b)(3) is appropriate as to the FCI FDCPA Class and WestVue Subclass members in that common questions predominate over any individual questions and a class action is superior for the fair and efficient adjudication of this controversy.  A class action will cause an orderly and expeditious administration of FCI FDCPA Class and WestVue Subclass members' claims, and economies of time, effort and expenses will be fostered and uniformity of decisions will be ensured.

79.     Named Plaintiffs' claims are typical of the claims of the FCI FDCPA Class and WestVue Subclass members.

80.     Named Plaintiffs will fairly and adequately protect the interests of all FCI FDCPA Class and WestVue Subclass members in the prosecution of this action. They are similarly situated with,

and have suffered injuries similar to, the members of the FCI FDCPA Class and WestVue Subclass they seek to represent. Named Plaintiffs have been wronged, wish to obtain redress of the wrong, and want the Counter-Defendants stopped from enriching themselves via illegal activities or otherwise perpetrating similar wrongs on others on behalf of other unlicensed collection agencies.

81.     FCI's, Longvue's, and WestVue's failure to disclose the true status of WestVue (and similar unlicensed collection agencies it acts on behalf of) to Rizwan and Shaheen and the FCI FDCPA Class and the WestVue Subclass members tolled the running of any limitations that may otherwise apply to the claims of the Named Plaintiffs and the members of the FCI FDCPA Class and WestVue Subclass until such disclosures were made.

82.     The Named Plaintiffs and members of the FCI FDCPA Class and WestVue Subclass were not required to assume that the Counter Defendants were engaging in illegal activities in court proceedings with the aid and assistance of each other. Further, the Named Plaintiffs and members of the FCI FDCPA Class and WestVue Subclass were reasonable in not assuming that FCI or Longvue were aiding illegal activities given FCI's and Longvue's duty of care issued as part of their licenses to operate in the State of Maryland.

83.     Any limitations period that may otherwise apply to claims of the Named Plaintiffs and members of the FCI FDCPA Class is equitably tolled since FCI and Longvue had a duty to disclose material facts to the Named Plaintiffs and FCI FDCPA Class related to WestVue and similar entities' illegal status.   The omission of this fact made FCI's and Longvue's acts unfair or deceptive.

84.     Due to its presumed and actual knowledge, as described *supra*, FCI had an appreciation that it was not entitled to receive the benefits it was attempting to collect or actually collecting

27

from the Counter-Plaintiffs and FCI FDCPA Class and WestVue Subclass on behalf of WestVue and similar unlicensed collection agencies.

85.     The FCI FDCPA Class and WestVue Subclass members have suffered damages, losses, and harm similar those sustained by the Named Plaintiffs as described *supra*.

## COUNT I
### DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF
(FCI FDCPA Class and WestVue Subclass, and Individual Claims
Against All Counter Defendants)

86.     Named Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

87.     Named Plaintiffs seek a declaration that: (a) FCI is not entitled, directly or indirectly, as a matter of law to collect against Named Plaintiffs and any member of the FCI FDCPA Class while WestVue and similar entities are acting as unlicensed collection agencies; and (b) Longvue is not entitled, directly or indirectly, as a matter of law to collect against Named Plaintiffs and any member of the FCI FDCPA Class while WestVue and similar entities are acting as unlicensed collection agencies.

88.     FCI, Longvue, and/or WestVue should be enjoined from attempting to collect any sums from Named Plaintiffs and the FDCPA Class and WestVue Subclass members, directly or indirectly on behalf of WestVue and similar unlicensed collection agencies.

WHEREFORE, Named Plaintiffs pray this Court to enter judgment in their favor and to:

A. Certify this case as a class action with the Named Plaintiffs as representatives of the FCI FDCPA Class and WestVue Subclass Representatives and their attorneys as Class Counsel on behalf of the FCI FDCPA Class and WestVue Subclass described herein;

B. Order appropriate injunctive relief against FCI, Longvue, and WestVue to prevent further violations of law or provision of benefits to WestVue and similar unlicensed collection agencies from their illegal activities, including a preliminary and permanent injunction;

C. Order and declare that as a matter of law, that FCI, Longvue, and/or Westvue, and any person acting on their behalf, including its authorized agents and attorneys, may not collect directly or indirectly from Named Plaintiffs and the FCI FDCPA Class and WestVue Subclass members so long as WestVue and similar entities remain as unlicensed collection agencies;

D. Order and declare that FCI, Longvue, and WestVue are not entitled to the assistance of any Maryland Court to collect any alleged consumer debt of Named Plaintiffs or the FCI FDCPA Class or WestVue Subclass;

E. Award reasonable attorneys' fees, litigation expenses and costs;

F. Order further appropriate declaratory relief to carry out the relief granted by the Court; and

G. Provide such other or further relief as the Court deems appropriate.

## COUNT II
## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT,
### 15 U.S.C. § 1692, *et seq.*
### (FCI FDCPA Class and Westvue Subclass, and Individual Claims
### Against All Counter Defendants)

89. Named Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

90. Counter-Defendants acquired their interest in the Named Plaintiffs' and FCI FDCPA Class Members' consumer mortgage loans during a period in which each alleges (directly and indirectly) the loans were in default and therefore each are a Debt Collector within the meaning of 15 U.S.C. § 1692a(6).

91. By communicating with the Named Plaintiffs and FCI FDCPA Class and WestVue Subclass members directly and indirectly and threatening and/or actually pursuing litigation and demanding sums not legally due from the Named Plaintiffs and FCI FDCPA Class and WestVue Subclass members on behalf of WestVue and similar unlicensed collection agencies (who are not exempt

from licensure as collection agencies in the State of Maryland), FCI, Longvue, and WestVue used false, deceptive, or misleading representations or means in connection with the collection of the consumer debts of the Named Plaintiffs and FCI FDCPA Class and WestVue Subclass members in violation of 15 U.S.C. § 1692e.

92. FCI's, Longvue's, and WestVue's actions described herein constitute unfair or unconscionable means to collect or attempt to collect from the Named Plaintiffs and FCI FDCPA Class and WestVue Subclass members in violation of 15 U.S.C. § 1692f.

93. FCI's, Longvue's, and WestVue's violations are material since any judgment entered in favor of WestVue, directly or indirectly, would be void as a matter of law according to *Finch*. The materiality of Counter-Defendants' acts and omissions subject to this claim are further exemplified by the fact that by proceeding against the FCI FDCPA Class and WestVue Subclass members without the legal right to do so in this and other courts, the Counter-Defendants are utilizing the Court's resources for their illegal and improper purposes.

94. Named Plaintiffs and the FCI FDCPA Class and WestVue Subclass have suffered actual economic and non-economic damages, as more fully described *supra* and have incurred attorney's fees and court costs as a result of Counter-Defendants' illegal debt collection practices and direct and indirect actions described herein.

95. The FDCPA provides for statutory damages in addition to actual damages. The FCI FDCPA Class is entitled to statutory damages in the sum of $500,000 from Counter Defendants FCI and Longvue pursuant to 15 U.S.C.A. § 1692k(a)(2)(B). The WestVue Subclass is also entitled to statutory damages in the sum of $500,000 from Counter-Defendant WestVue pursuant to 15 U.S.C.A. § 1692k(a)(2)(B).

96. Pursuant to Rule 2-231(d) Named Plaintiffs request the Court to determine the Counter

Defendants' liability under this claim as to actual damages pursuant to 15 U.S.C.A. § 1692k(a)(1) to the FCI FDCPA Class and WestVue Subclass members for the purpose of permitting these class and subclass members to seek their actual damages on an individual basis (if they so desire and have any actual damages).  Named Plaintiffs seek actual damages on their FDCPA claims in a sum equal to $40,000.00.

WHEREFORE Named Plaintiffs pray that this Court enter judgment in favor of the FCI FDCPA Class and WestVue Subclass and against FCI, Longvue, and WestVue on these FDCPA claims and to:

A. Certify this case as a class action with the Named Plaintiffs as representatives of the FCI FDCPA Class and Westvue Subclass and their attorneys as Class Counsel on behalf of the FCI FDCPA Class and Westvue Subclass described herein;

B. Award Statutory damages in the amount allowed by the FCI FDCPA Class from Counter Defendants FCI and Longvue equal to $500,000.00;

C. Award Statutory damages in the amount allowed by the WestVue Subclass from Counter-Defendant WestVue equal to $500,000.00;

D. Pursuant to Rule 2-231(d), determine FCI, Longvue, and WestVue liable as a matter of law to the FCI FDCPA Class and WestVue Subclass for actual damages pursuant to 15 U.S.C.A. § 1692k(a)(1) and as to the Named Plaintiffs award their individual, actual damages as determined by the trier of fact;

E. Award reasonable attorney's fees, litigation expenses and costs; and

F. Provide such other or further relief as the Court deems appropriate.

31

## COUNT III
### Violation of the Maryland Consumer Debt Collection Act,
### COM. LAW, §14-201 *et seq.* ("MCDCA")
### (FCI FDCPA Class and WestVue Subclass, and Individual Claims
### Against All Counter-Defendants)

97. Named Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

98. Counter-Defendants are collectors by attempting to collect upon debts of the Named Plaintiffs and FCI FDCPA Class and WestVue Subclass members arising out of consumer transactions— their mortgage loans used for personal purposes to acquire or refinance their homes and Property. MD CODE ANN., COM. LAW §14-201(b).

99. Through their communications with the Named Plaintiffs and FCI FDCPA Class and WestVue Subclass members and those communications recorded in the land records of various counties and filed in this and other courts throughout the State of Maryland, Counter Defendants have attempted to assert rights, directly or indirectly, to collect money from the Named Plaintiffs and FCI FDCPA Class and WestVue Subclass members from which they have no legal right to attempt to collect because WestVue and similar entities are not licensed as collection agencies but are required to be licensed to collect directly or indirectly (through FCI and Longvue) in the State of Maryland. These communications are made in violation of MD CODE ANN., COM. LAW §14-202(8).

100.    Further, FCI and LongVue have maintained each may cause foreclosure actions on behalf of WestVue and similar entities to be threatened and maintained even though WestVue and similar entities have no legal right to pursue the actions while acting without the proper collection agency license in violation of MD CODE ANN., COM. LAW §14-202(8).

101.    Finally, by recording documents in Maryland land records and filing papers in this and other Maryland courts indicating that they have a right to collect payments from the Named Plaintiffs and FCI FDCPA Class and WestVue Subclass members on behalf of WestVue (and

similar unlicensed collection agencies/mortgage lenders), FCI and Longvue have used communications in collecting or attempting to collect a debt which improperly imply that the government or a government agency has authorized the collection effort when the government has not done so in violation of MD CODE ANN., COM. LAW §14-202(9).

102.    Named Plaintiffs and the FCI FDCPA Class and WestVue Subclass members are therefore entitled to their damages and losses described *supra* which have proximately resulted from Counter Defendants' direct and indirect actions in violation of the MCDCA. MD. CODE ANN., COM. LAW, § 14-203.

WHEREFORE Named Plaintiffs pray that this Court enter judgment in favor of Named Plaintiffs and the FCI FDCPA Class and the Westvue Subclass against the Counter Defendants on their MCDCA claims and:

      A. Certify this claim as a partial class action with the Named Plaintiffs as the Class Representatives and their attorneys as counsel on behalf of the FCI FDCPA Class and WestVue Subclass members described herein for the limited purpose pursuant to MD. RULE 2-231(d) for determining the Counter Defendants' liability to the FCI FDCPA Class and WestVue Subclass pursuant to the MCDCA;

      B. Award actual damages to Named Plaintiffs for their individual damages under the MCDCA in the sum of $40,000.00;

      C. Award reasonable attorney's fees, litigation expenses and costs; and

      D. Provide such other or further relief as the Court deems appropriate.

Respectfully Submitted,

Phillip R. Robinson
Consumer Law Center LLC
8737 Colesville Road, Suite 308
Silver Spring, MD 20910
Phone (301) 448-1304

Heather L. Gomes
The Law Office of Heather L. Gomes, LLC
8737 Colesville Road, Suite 308
Silver Spring, MD 20910
Phone (301) 273-8045

*Attorneys for Named Plaintiffs & Putative Class
and Subclass Members*

## REQUEST FOR A JURY TRIAL

Named Plaintiffs request a jury trial on all claims asserted herein.

_____
Phillip Robinson

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was hand delivered on this 29th day of

December 2015 to the following:

Nicholas Derdock
BWW Law Group, LLC
6003 Executive Blvd., Suite 101
Rockville, MD  20852

*Plaintiffs/Substitute Trustees*

I hereby certify that a copy of the foregoing will be served upon the following by private process upon Counter Defendants, along with a Writ of Service issued by Honorable Clerk of the Court: FCI Lender Services, Inc., Longvue Mortgage Capital, Inc., and Westvue NPL Trust II as Trustee for Westvue Series 2014-1.

Phillip Robinson